CONTE C. CICALA, State Bar No. 173554
conte.cicala@clydeco.us
JEANINE S. TEDE, State Bar No. 177731
jeanine.tede@clydeco.us
CLYDE & CO US LLP
101 Second Street, 24th Floor
San Francisco, California 94105
Telephone: (415) 365-9800
Facsimile:  (415) 365-9801

Attorneys for Plaintiff
PANAMAX INTERNATIONAL SHIPPING
COMPANY, LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PANAMAX INTERNATIONAL SHIPPING COMPANY, LTD.,<br><br>Plaintiff,<br><br>v.<br><br>PETROLEA OIL CORPORATION,<br><br>Defendant. | Case No. 16-6815<br><br>**VERIFIED COMPLAINT OF PANAMAX INTERNATIONAL SHIPPING COMPANY, LTD. PURSUANT TO RULE B OF THE SUPPLEMENTAL RULES FOR ADMIRALTY OR MARITIME CLAIMS AND ASSET FORFEITURE ACTIONS**<br><br>[F.R.C.P. SUPPLEMENTAL ADMIRALTY RULE B] |

Plaintiff, Panamax International Shipping Company, Ltd. ("Panamax International"), by its undersigned attorneys, Clyde & Co US LLP, complaining of the Defendant Petrolea Oil Corporation ("Petrolea") herein, alleges upon information and belief as follows:

**JURISDICTION**

1.  This is a case of admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333, and is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, in that it involves a claim for breach of a maritime contract for the charter of a vessel.

/ / /

/ / /

## INTRADISTRICT ASSIGNMENT

2. Pursuant to Civil L.R. 3.2(c), intradistrict assignment in San Francisco is proper because the property to be attached is located in the City and County of San Francisco.

## THE PARTIES

3. At all relevant times, Plaintiff Panamax International was and now is a corporation duly organized and existing under and by virtue of the laws of the Marshall Islands, and was the Disponent Owner and/or Time Charterer of the M/T OVERSEAS VISAYAS (the "Vessel") among various ports of the world in the ocean carriage of goods by water for hire, including ports in the United States.

4. At all relevant times, Defendant Petrolea was and now is a corporation or other business entity duly organized and existing under and by virtue of the laws of the State of Florida, with an office and place of business at 1867 N.W. 97th Avenue, Doral, Florida 33172, and was the Voyage Charterer of the Vessel.

## FIRST CAUSE OF ACTION

### (Breach of Charter – Rule B Attachment)

5. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1-4 herein with the same force and effect as if set forth at length.

6. On or about July 13, 2016, Petróleos de Venezuela, S.A. ("PDVSA"), as seller, and Petrolea, as buyer, allegedly entered into an agreement for the purchase and sale of a cargo of Mesa 30 crude oil to be supplied by PDVSA. (A true and accurate copy of the alleged agreement between PDVSA and Petrolea dated July 13, 2016, is attached as Exhibit A hereto).

7. Pursuant to Clause 10 of that agreement, PDVSA was obligated to provide Petrolea with the necessary documentation to allow customs clearance of the cargo supplied by PDVSA.

8. By Voyage Charter party dated October 21, 2016, on The ExxonMobil VOY2005 Charter form, the incorporated Valero Marketing and Supply Company Charter Party Clauses dated June 26, 2006, as amended, the incorporated BIMCO Anti-Corruption Clause for Charter parties dated December 7, 2015 (the "BIMCO Anti-Corruption Clause"), and the incorporated Intertanko Tanker Chartering Questionnaire 88 (collectively, the "Voyage Charter"), Panamax

CLYDE & CO US LLP
101 Second Street, 24th Floor
San Francisco, California 94105
Telephone: (415) 365-9800

International, as Disponent Owner, chartered the Vessel to Petrolea for the carriage of a cargo of Mesa 30 crude oil from La Salina, Maracaibo Lake, Venezuela (the "Loading Port") to "1-2 SP (S) INCLUDING [SHIP-TO-SHIP] LOCATIONS MALAYSIA (TANJUN PELEPAS – LINGGI RANGE)" (the "Discharge Port").  (A true and accurate copy of the Voyage Charter is attached as Exhibit B hereto).

9. The Voyage Charter provides a loading window for the subject cargo of October 29, 2016, to October 31, 2016, and allowed thirty-six hours of laytime at the Loading Port.

10. Pursuant to the Voyage Charter, Petrolea was obligated to pay Panamax International freight in the amount of "LUMP SUM USD 2,275,000 BASIS 1 TO 1 'ALL INCLUSIVE' EXCEPT MARACAIBO LAKE CLAUSE STATED HEREIN."

11. The Voyage Charter obligates Petrolea to pay freight in advance prior to commencement of discharge of the cargo.

12. The demurrage rate for the subject voyage was set at $22,500 per day, pro rata.

13. The Voyage Charter also obligates Petrolea to pay any demurrage at the Loading Port within ten calendar days after the Vessel departs the Loading Port.

14. The Voyage Charter also provides that "ANY TIME AND/OR DEMURRAGE ON ACCOUNT OF DELAYS IN OWNERS NOT RECEIVING ANY PAYMENTS (IE. FREIGHT, ADVANCED DEMURRAGE) DUE UNDER THE C/P BEFORE COMMENCEMENT OF DISCHARGING, AND ANY EXPENSES/COSTS FOR UNBERTHING/REBERTHING DUE TO ABOVE MENTIONED DELAYS, WILL BE FOR [CHARTERER'S] ACCOUNT."

15. The Voyage Charter also includes a "MARACAIBO LAKE CLAUSE" which provides in relevant part that "ANY DELAY WITHIN THE LAKE FOR REASONS BEYOND OWNERS' CONTROL TO BE FOR CHARTERERS ACCOUNT."

16. The Voyage Charter also provides in relevant part: "CHARTERERS HAVE AGREED TO PAY UPFRONT WITHIN 24 HRS AFTER LIFTING ALL SUBS AN AMOUNT EQUIVALENT TO USD 300,000.00 TO OWNERS DESIGNATED BANK ACCT IN THIS CP. THIS AMOUNT WILL BE DEDUCTED AT SOURCE BY CHARTERERS AGAINST FINAL FREIGHT PEYMENT [sic]."

VERIFIED COMPLAINT OF PANAMAX INTERNATIONAL SHIPPING PURSUANT TO RULE B OF THE SUPPLEMENTAL RULES FOR ADMIRALTY OR MARITIME CLAIMS AND ASSET FORFEITURE ACTIONS

17. Pursuant to the Charter, on or about October 25, 2016, Petrolea made two wire transfers to Panamax International's agent in the amount of $150,000 each from bank accounts with Wells Fargo Bank NA located in San Francisco, California owned by, or being held for the benefit of, Petrolea. (A true and accurate copy of the payment details from Petrolea's bank accounts to Panamax International's agent on October 25, 2016, is attached as Exhibit C hereto).

18. The Voyage Charter further provides:

> (2) OWNERS ARE CHARTERING THE VESSEL TO "PETROLEA OIL CO" IN GOOD FAITH ASSUMING THERE IS A CLEAR, LEGAL & STANDARD TRADITION OF THE ORIGIN OF THE CARGO TO BE LOADED ON BOARD. ANY DISPUTE BETWEEN SUPPLIERS PDVSA & "PETROLEA OIL CO" AS OF THE TRADITION OF THE CARGO FOR REASON BEYOND OWNERS' CONTROL WILL GIVE OWNERS THE RIGHT TO REMAIN HARMLESS & TO IMMEDIATELY TERMINATE THE CP WITHOUT FURTHER OBLIGATIONS."

19. The BIMCO Anti-Corruption Clause provides in relevant part:

> (d) If either party fails to comply with any applicable anti-corruption legislation it shall defend and indemnify the other party against any fine, penalty, liability, loss or damage and for any related costs (including, without limitation, court costs and legal fees) arising from such breach.
>
> (e) Without prejudice to any of its other rights under this Charter Party, either party may terminate this Charter Party without incurring any liability to the other party if
>
> (i) at any time the other party or any member of its organisation has committed a breach of any applicable anti-corruption legislation in connection with this Charter Party; and
>
> (ii) such breach causes the non-breaching party to be in breach of any applicable anti-corruption legislation.
>
> Any such right to terminate must be exercised without undue delay.

20. On or about October 30, 2016, the Vessel arrived at the customary anchorage at the Loading Port and tendered its Notice of Readiness.

21. On or about November 2, 2016, the Vessel and her crew were detained prior to loading the subject cargo at the Loading Port by the National Guard of Venezuela due to alleged smuggling of the cargo for failure by PDVSA and Petrolea to present the documents required by the Venezuelan authorities to export Mesa 30 crude oil from the Loading Port.

22. The Vessel and her crew remain detained in Venezuela while the Venezuelan authorities conduct an investigation of the alleged attempt to smuggle the cargo by PDVSA and Petrolea from the Loading Port.

23. Petrolea has breached its obligations under the Voyage Charter by failing to load the subject cargo at the Loading Port, and Panamax International has suffered damages as a result including, but not limited to, unpaid freight and demurrage.

24. Plaintiff believes and thereupon alleges that Petrolea has also breached its obligations under the Voyage Charter by participating in a scheme with PDVSA to smuggle the subject cargo from the Loading Port without the documents required by the Venezuelan authorities to export Mesa 30 crude oil from the Loading Port, and Panamax International has suffered damages as a result.

25. The Voyage Charter provides that all disputes between Panamax International and Petrolea are to be resolved by arbitration in Houston, Texas in accordance with the Federal Maritime Law of the United States. Plaintiff Panamax International, as claimant, anticipates that it will soon commence an arbitration proceeding against Petrolea to recover its losses for breach of the Voyage Charter. Costs, including a reasonable allowance of attorneys' fees, are recoverable pursuant to the arbitration clause in the Voyage Charter. Such costs and attorneys' fees are estimated to be approximately $400,000.

26. This action is brought by Panamax International to recover its losses caused by the breach of the Voyage Charter, and to obtain security in favor of Panamax International for such losses. This action is also brought to obtain security for such additional amounts as will cover Panamax International's anticipated costs in the instant action, as well as interest, all of which are recoverable as part of Panamax International's claims under applicable law.

27. Panamax International brings this action on its own behalf and on behalf of all others who may be interested as their interests may ultimately appear.

28. All conditions precedent required of Panamax International have been performed.

29. By reason of the premises, Panamax International (and those on whose behalf this suit is brought) have sustained damages in the sum of approximately in excess of $3,555,950.00,

plus interest, costs and attorneys' fees, as nearly as the same can now be estimated, no part of which has been paid.  Panamax International reserves its rights to increase this amount should its losses and damages ultimately be in excess thereof.

30. The resulting losses sustained by Panamax International were not caused or contributed to by any fault, negligence or want of care on the part of Panamax International, but were caused or contributed to by the fault, negligence and want of care on the part of Petrolea, its agents, servants and employees.

31. Upon information and belief, and after investigation, Petrolea cannot be found in this District for the purpose of Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, but Panamax International is informed that Petrolea has, or will have during the pendency of this action, assets within this District comprising, *inter alia*, cash, funds, credits, debts, accounts, letters of credit, freights, charter hire, sub-charter hire, and/or other assets of, belonging to, due, held, or being transferred for the benefit of Petrolea, including but not limited to, assets at, or being transferred to or from Wells Fargo Bank NA and/or such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein.

32. All and singular the premises are true, and within the Admiralty and Maritime Jurisdiction of the United States and of this Honorable Court.

33. The total amount sought by Panamax International to be attached pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions by Plaintiff against Petrolea includes:

    a. Damages for Petrolea's failure to load cargo pursuant to the Voyage Charter as of November 28, 2016, in the amount of approximately $2,485,000;

    b. Interest on the above sum at a rate of 9% per annum for three years, the estimated time it will take to obtain and enforce a final arbitration award and/or court judgment, which interest is recoverable, estimated to be $670,950.00;

|   |   |   |
|---|---|---|
| 1 | c. | Estimated costs, including attorneys' fees, of arbitration, which are recoverable, in the amount of at least $400,000; |

For a total claim of at least $3,555,950.00 as nearly as can presently be determined.

**WHEREFORE,** Plaintiff prays that this Honorable Court:

a.  Enter judgment in the sum of $3,555,950.00 in favor of Plaintiff and against the Defendant, together with interest, costs and attorneys' fees;

b.  That process in due form of law according to the practice of this Court may issue against the Defendant, citing the Defendant to appear and answer the foregoing, failing which a default will be taken against the Defendant for the principal amount of the claim of $3,555,950.00, plus interest, costs and attorneys' fees;

c.  That since the Defendant cannot be found within this District pursuant to Supplemental Rule B, all tangible or intangible property of the Defendant, up to and including the amount of the claim of $3,555,950.00, be restrained and attached, including, but not limited to, any cash, funds, credits, debts, accounts, letters of credit, freights, charter hire, sub-charter hire, and/or other assets of, belonging to, due, or held for the benefit of the Defendant, including but not limited to, such assets as may be held or received in its name or as may be held or received for its benefit, at, or within the possession, custody, or control of such banking institutions including, but not limited to, Wells Fargo Bank NA and any such other garnishees upon whom a copy of the Process of Maritime Attachment and Garnishment issued herein may be served; and

d.  That Plaintiff have such other, further and different relief as this Court may deem just and proper in the premises.

Dated:  November 28, 2016            CLYDE & CO US LLP

By:     */s/ Conte C. Cicala*
Conte C. Cicala
Jeanine S. Tede
Attorneys for Plaintiff
Panamax International Shipping Company, Ltd.

# VERIFICATION

CHRISTIAN CSASZAR., pursuant to the provisions of 28 U.S.C. § 1746, declares and states as follows:

1. That I am ___SECRETARY___ of Plaintiff Panamax International.

2. That I have read the foregoing Verified Complaint and know the contents thereof, and that the same are true to the best of my knowledge, except those matters alleged upon information and belief, and as to those I believe them to be true.

3. That the source of my information and the grounds for my belief as to all matters are documents in the possession of my company and information provided by the Plaintiff by way of written communications with its representatives.

4. That I am authorized to make this verification on behalf of the Plaintiff.

I declare under penalty of perjury under the laws of the United States of America that the above declaration is true and correct to the best of my knowledge and belief.

Executed this __25__ day of November, 2016, at __SANTIAGO, CHILE__.

_[signature]_

CLYDE & CO US LLP
101 Second Street, 24th Floor
San Francisco, California 94105
Telephone: (415) 365-9800

2332901                                                                 Case No. xxxx
VERIFIED COMPLAINT OF PANAMAX INTERNATIONAL SHIPPING PURSUANT TO RULE B OF THE SUPPLEMENTAL RULES FOR ADMIRALTY OR MARITIME CLAIMS AND ASSET FORFEITURE ACTIONS